## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

SCOTT JENSEN, in his capacity as Director
of the Rhode Island Department of Labor
and Training,
         Plaintiff,

        v.                                     C.A. No. 15-083-MML

NORTH RIVER INSURANCE COMPANY,
         Defendant.

**MEMORANDUM AND ORDER**

The plaintiff in this bond insurance coverage case, Scott Jensen ("Jensen"), in his capacity as Director of the Rhode Island Department of Labor and Training ("DLT"), brought a claim against North River Insurance Company ("North River") in connection with a workers compensation bond (the "Bond") issued by North River to Landmark Health Systems, Inc. ("Landmark"). The matter is before the Court on North River's motion for summary judgment, to which no response in opposition was filed by Jensen. For the reasons stated herein, North River's motion is GRANTED.

### I. Factual Background and Procedural History[1]

On September 24, 1990, North River issued the Bond to Landmark as the principal and for the benefit of DLT. DSUF 2. The Bond,

---

[1] The facts in this summary are taken from (1) North River's Statement of Undisputed Facts ("DSUF"), to which no response was received as of the date of this Memorandum and Order, and (2) the exhibits attached to the DSUF, which include the Bond, the notice of cancellation, documents related to the claim at issue, and various items of correspondence between the parties.

limited to a penal sum of $500,000, secured payment of benefits and services pursuant to R.I. Gen. Laws 28-33 and 28-34, including workers compensation for Landmark employees. DSUF 3. Landmark, which was self-insured at the time in question, was responsible for a portion of workers compensation claim payments. After that, Republic Western Insurance Company ("Republic Western") was responsible to pay medical and other expenses under an excess policy (the "Excess Policy") and Landmark was obligated to make continuing indemnity payments. DSUF 4.

After a number of annual renewals, the Bond was cancelled effective October 1, 1999, and, as DLT acknowledged, no liability exists under the Bond for injuries incurred on or after that date. DSUF 5, 6. Following an injury on November 17, 1998, a workers compensation claim was made by Frances Valeika (the "Valeika Claim"). DSUF 7. After compensation payments were ordered in 1999, Landmark made payments on the Valeika Claim, first directly and, beginning in 2003, through Beacon Mutual Insurance Co. as its third party administrator. DSUF 8, 9. After Landmark's payments on the Valeika Claim reached $350,000, Republic West began reimbursing Landmark for medical and other expenses pursuant to the Excess Policy, while Landmark continued to make indemnity payments. DSUF 10.

In 2008, Landmark entered receivership. Pursuant to an agreement with its court-appointed receiver, the indemnity payments

on the Valeika Claim continued. DSUF 11. Landmark's assets were acquired by Prime Healthcare, which failed to continue making the indemnity payments. DSUF 12. Republic West continued to make medical and other payments on the Valeika Claim. DSUF 13.

As provided for in the Bond, North River assumed the indemnity portion of the Valeika Claim that was not paid by Republic West. DSUF 14. As of August 1, 2015, North River had made indemnity payments of $94,502 on the Valeika Claim. DSUF 15. Subsequently, the DLT requested a $77,786 contribution from North River to settle the Valeika Claim, to which North River agreed. DSUF 15, 16. A letter dated November 17, 2014 from DLT to North River indicates that, although North River's requested contribution to the Valeika Claim settlement was set at $77,876, DLT asked for immediate payment of $150,000 under the Bond to "allow the Department to maintain other funds for potential claims." Defs.' Ex. H (Dkt. No. 11-9). Per e-mail dated November 19, 2013, DLT confirmed that there was only one open claim (the Valeika Claim) against the Bond. DSUF 18; Defs.'s Ex. J (Dkt. No. 11-11).

On February 6, 2015, DLT filed a complaint against North River in Rhode Island state court, which was removed by North River to this Court on March 3, 2015 (Dkt. No. 1-2). North River filed an answer on March 9, 2015 (Dkt. No. 4). The Court conducted a Rule 16 conference on April 17, 2015, at which counsel for both parties were present (Dkt. Entry 04/17/15). Subsequently, the Court entered

a pretrial order pursuant to which dispositive motions were due by July 31, 2015 (Dkt. No. 8). By stipulation of the parties, that deadline was further extended to September 30, 2015. (Dkt. No. 9).

On September 30, 2015, North River filed a motion for summary judgment (Dkt. No. 10), together with a supporting memorandum (Dkt. No. 10-1), a separate statement of undisputed facts (Dkt. No. 11), the affidavit of Sarah Stas, Executive Specialist for North River's parent company (Dkt. No. 11-1), and various exhibits (Dkt. Nos. 11-2 through 11-11). DLT's response to North River's motion was due on October 19, 2015 (Dkt. Entry 10/27/2015).[2] As of the date of this Memorandum and Order, no response was received to North River's motion.

## II. Standard of Review

A motion for summary judgment is governed by Fed. R. Civ. P. 56. The party moving for summary judgment has the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets that burden, the nonmoving party must set forth facts

---

[2] On October 26, 2015, concerned about the unusual lack of response to a dispositive motion, the Clerk contacted the parties via e-mail and advised counsel for DLT that the response to North River's motion was a week overdue. There was no response to the Clerk's e-mail, nor was a request made for an extension of time in this matter.

demonstrating the existence of a genuine dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2506, 91 L.Ed.2d 202 (1986).

Pursuant to Local Rule LR Cv 7(b)(1), "[a]ny party opposing a motion shall file and serve an objection not later than 14 days after service of the motion," accompanied by a separate memorandum of law setting forth the reasons for the objection and applicable points and authorities supporting the objection. Local Rule 56, which requires a moving party to submit a separate Statement of Undisputed Facts, LR Cv 56(a)(1), (2), provides that "any fact alleged in the movant's Statement of Undisputed Facts shall be deemed admitted unless expressly denied or otherwise controverted by a party objecting to the motion." LR Cv 56 (a)(3).

With respect to failure of a party to address another party's assertions, Federal Rule 56(e) provides that

> "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3 grant summary judgment <u>if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it</u>; or
> (4) issue any other appropriate order. Fed. R. Civ. P. 56(e)(1)-(4) (emphasis added).

In the event a "non-moving party fails to file a timely

5

opposition to an adversary's motion for summary judgment, the court may consider the summary judgment motion unopposed, and take as uncontested all evidence presented with that motion." Perez-Cordero v. Wal-Mart Puerto Rico, 440 F.3d 531, 533-534 (1st Cir. 2006). The First Circuit has advised that a district court "cannot grant a motion for summary judgment merely for lack of response by the opposing party, since the district court must review the motion and the supporting papers to determine whether they establish the absence of a genuine issue of material fact..." De La Vega v. San Juan Star, Inc., 377 F.3d 111, 115 (1st Cir. 2005)(citing NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 7–8 (1st Cir.2002) ("[A] district court may not automatically grant a motion for summary judgment simply because the opposing party failed to comply with a local rule requiring a response within a certain number of days.")). With these principles in mind, the Court considers North River's motion for summary judgment.

## III. Discussion

Although its motion for summary judgment is unopposed, North River, as the moving party, must "meet its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law." De La Vega, 377 F.3d at 115-116. However, because there has been no response from DLT, which bears the ultimate burden of proof on its claim under the Bond, North River's facts are entirely undisputed. Moreover, North River's representations are amply

supported by the plain language of the Bond and the submitted exhibits which chronicle the interactions between the parties.

It is undisputed that the Bond was cancelled effective October 1, 1999 and that North River was "not responsible thereunder for any Acts or Defaults committed or Loss occurring after said date of cancellation." Defs.' Exs. C, D (Dkt. Nos. 11-4, 11-5). North River asserts—and DLT does not dispute, nor has it offered any evidence to the contrary—that the only outstanding claim asserted against the Bond is that of Frances Valeika. Defs.' Ex. J (Dkt. No. 11-11). After Prime Healthcare acquired Landmark's assets and failed to make indemnity payments on the Valeika Claim, North River made payments totaling $94,502 on the Valeika Claim. Defs.' Ex. G (Dkt. No. 11-8). Eventually, the Valeika Claim was settled by Republic West, which sought a $77,876 contribution from DLT. Defs.' Ex. H (Dkt. No. 11-9). In turn, DLT requested that North River pay that amount[3] under the Bond, to which North River agreed. Defs.' Exs. H, I (Dkt. Nos. 11-9, 11-10).

The Bond requires payment only to "persons entitled thereto," Ex. A at Page 2 of 5, ¶ 4(Dkt. No. 11-2), *i.e.*, to "persons who may be entitled to such sums for the compensation benefits and services

---

[3] It is unstated on what grounds DLT requested immediate payment of $150,000 to settle the Valeika Claim and to "allow the Department to maintain other funds for potential claims," fifteen years after the Bond had been cancelled and with no assertion of additional claims thereunder.

provided by" Rhode Island's worker compensation laws, R.I. Gen. Laws §§ 28-33, 28-34. Id. at ¶ 5. Nothing in those statutes or in the Bond itself imposes an obligation on North River to pay the full amount of the Bond's penal sum to DLT without a corresponding identified and approved claim. In the absence of even an assertion that such a claim exists; that such a claim may be raised more than sixteen years after the Bond was cancelled; or of any factual or legal support for DLT's demand under the Bond, DLT cannot withstand North River's motion for summary judgment.

## Conclusion

Based on the foregoing, North River's motion for summary judgment is GRANTED. The Clerk is directed to enter judgment in favor of North River.

SO ORDERED.

/s/ Mary M. Lisi

Mary M. Lisi
Senior United States District Judge

December 4, 2015